## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

**GREATGIGZ SOLUTIONS, LLC,**

Plaintiff

v.

**GRUBHUB HOLDINGS, INC.,**

Defendant

Case No. 6:20-cv-628

**JURY TRIAL DEMANDED**

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

GreatGigz Solutions, LLC ("Plaintiff") hereby files this First Amended Complaint for Patent Infringement against GrubHub Holdings, Inc. ("GrubHub" or "Defendant"), and alleges, upon information and belief, as follows:

### THE PARTIES

1.  GreatGigz Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.  Upon information and belief, GrubHub Holdings, Inc. is a domestic corporation organized and existing under the laws of Delaware, with a principal place of business located in Chicago, Illinois.  GrubHub may be served through its registered agent in the State of Texas at Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.  On information and belief, GrubHub sells and offers to sell products and services throughout the State of Texas, including in this judicial District, and introduces services via its infringing

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

systems into the stream of commerce knowing and intending that they would be extensively used in the State of Texas and in this judicial District. On information and belief, GrubHub specifically targets customers in the State of Texas and in this judicial District.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

4.  This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Texas. Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages and mobile applications) its services in the State of Texas and in this District. Defendant has purposefully and voluntarily made its infringing systems available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District. On information and belief, GrubHub serves nearly 24 Million active diners, and processes more than 500,000 daily food orders using the infringing systems and methods. *See* https://about.grubhub.com/about-us/what-is-grubhub/default.aspx.

5.  On information and belief, Defendant maintains an ongoing and continuous business presence in the State of Texas and specifically within this District, which is illustrated by the fact that GrubHub has 65 employees residing in the Austin, Texas area and within this District. *See, e.g.,* GrubHub corporate profile page on LinkedIn.com, which lists the location of GrubHub employees worldwide, and specifically lists 65 such individual employees in the Austin, Texas area. Among those employees are individuals holding the following titles: (i) Sr. Talent Acquisition; (ii) Human Resources; (iii) Senior Decision Scientist; (iv) Corporate Care; (v) Business Development Representative; (vi) Corporate Care Lead; and (vii) Senior Manager –

Client        Success.                *See*        https://www.linkedin.com/company/grubhub-

seamless/people/?facetGeoRegion=us%3A64



6.      Further, on information and belief, GrubHub maintains substantial long-term data centers in the

State of Texas.  On information and belief, such data centers are under the direct control of

GrubHub and are fundamental elements of the infringing system operated by GrubHub to

directly infringe the asserted claims.  *See, e.g.,* GrubHub SEC Filing – 2014 Form S-1, available

at:

https://www.sec.gov/Archives/edgar/data/1594109/000119312514075544/d647121ds1.htm[1]

7.      On information and belief, the data center location in Texas is strategic and represents an

important business advantage to GrubHub's business model.

---

[1] All references to Internet content, unless noted otherwise, are cited as of July 9, 2020, and as accessed
from a location in the State of Texas.

8.      Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C.

        §§ 1391(c)(2) and 1400(b).   As noted above, Defendant maintains a regular and established

        business presence in this District.


## PATENTS-IN-SUIT

9.      GreatGigz Solutions, LLC is the owner, by assignment, of U.S. Patent Nos. 6.662,194 ("the '194

        Patent"); 7,490,086 ("the '086 Patent"); 9,760,864 ("the '864 Patent"); and 10,096,000 ("the

        '000 Patent") (hereinafter collectively referred to as "the GGS Patents").

10.     The GGS Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of

        the United States Code.

11.     The inventions described and claimed in the GGS Patents were invented by Raymond Anthony

        Joao.

12.     The GGS Patents each include numerous claims defining distinct inventions.

13.     The priority date of each of the GGS Patents is at least as early as July 31, 1999.   As of the

        priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-

        routine.

14.     For example, and as evidence of the stated non-routine aspects of the inventions, during

        prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864

        Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision

        in *Alice*.   The patent examiner affirmatively and expressly found that the claims are in fact patent

        eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject

        matter, because none of the pending claims are directed to an abstract idea, and because there

        would be no preemption of the abstract idea or the field of the abstract idea.

15.     GreatGigz Solutions, LLC alleges infringement on the part of Defendant of the '194 Patent, the '086 Patent, the '864 Patent, and the '000 Patent (collectively as the "Asserted Patents").

16.     The '194 Patent relates generally to an apparatus and method for providing recruitment information, including a memory device for Storing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, and information regarding a job Search request, a processing device for processing information regarding the job Search request upon a detection of an occurrence of a Searching event, wherein the processing device utilizes information regarding the at least one of a job opening, a position, an assignment, a contract, and a project, Stored in the memory device, and further wherein the processing device generates a message containing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, wherein the message is responsive to the job Search request, and a transmitter for transmitting the message to a communication device associated with an individual in real-time.  *See* Abstract, '194 Patent.

17.     The '086 Patent relates generally to an apparatus, including a memory device which stores information regarding a job opening, position, assignment, contract, or project, and information regarding a job search request or inquiry, a processing device which processing the information regarding a job search request or inquiry upon an automatic detection of an occurrence of a searching event which is an occurrence of a job posting, a posting of new or revised data or information, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an to fill a position, or an event which creates an interest to seek a position, and generates a message, containing the information regarding a job opening, position, assignment, contract, or project, responsive to the job search

request or inquiry, and a transmitter which transmits the message to a communication device associated with an individual.  *See* Abstract, '086 Patent.

18.     The '864 Patent relates generally to an apparatus, including a memory device for storing work schedule information or scheduling information for an individual, a transmitter for transmitting a job search request to a computer, wherein the computer is specially programmed for processing the job search request, for generating a message containing information regarding a job opening, a position, an assignment, a contract, or a project, and for transmitting the message to the apparatus in response to the job search request; a receiver for receiving the message; and a display for displaying at least some of the information contained in the message.  *See* Abstract, '864 Patent.

19.     The '000 Patent relates generally to an apparatus, including a memory which stores work schedule information or scheduling information for an employer, hiring entity, individual, independent contractor, temporary worker, or freelancer; a receiver which receives a first request to obtain work schedule information or scheduling information for the employer, hiring entity, individual, independent contractor, temporary worker, or freelancer, and the first request is received from a first communication device; a processing device, specially programmed for processing information contained in the first request, generates a first message containing the work schedule or scheduling information for the employer, hiring entity, individual, independent contractor, temporary worker, or freelancer; and a transmitter for transmitting the first message to the first communication device or to a second communication device.   The apparatus processes information in a second request.  Information contained in the second request is based on the work schedule information or the scheduling information contained in the first message. *See* Abstract, '000 Patent.

20.    As noted, the claims of the Asserted Patents claim priority to at least July 31, 1999.  At that time, the idea of launching GrubHub.com was still several years away.

21.    The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

22.    Further, the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

23.    Consequently, the claims of the Asserted Patents recite systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers.

24.    The claims of the Asserted Patents overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.  For example, as of the date of invention, "[j]ob searching activities and recruitment activities typically require efforts in introducing parties to one another, pre-screening the parties prior to, and/or subsequent to, an introduction, acting as an information gathering entity for a party, exchanging information in order to determine if a relationship is appropriate and/or desirable, negotiating a deal, and/or consummating a deal between the respective parties.  While individuals and/or employers and/or hiring entities can act on their own behalf during most of the process, one of the parties may typically enlist the efforts of an employment agency or agencies, a recruiter(s), a so-called 'headhunter(s)', an employment and/or career consultant(s), a temporary employment agency or agencies, a personal agent(s), a personal manager(s), and/or another intermediary or intermediaries, sometimes at great

expense." '194 Patent at 1:59-2:6.  The inventions as claimed overcome these deficiencies in the state of the art, and provide substantial cost savings to all parties.  As explained, as of the date of invention, "[t]he enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, can be costly and can lead to job search efforts and/or recruitment efforts which may be limited in breadth and/or scope by the personal and/or individual contacts, limitations and/or constraints associated with the employment agency, recruiter, so-called 'headhunter', employment and/or career consultant, temporary employment agency, personal agent, personal manager, and/or other intermediary." *Id.* at 2:7-17.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for a costly middle-man in the process is overcome.  *Id.* at 2:18-24; 6:45-55.

25.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[j]ob searching efforts and recruitment efforts may be limited by and/or be constrained by limited personal contacts, geographical constraints, monetary constraints, and/or time constraints.  Oftentimes, individuals, employers and/or hiring entities, do not have the resources to conduct their own respective job searching efforts or recruitment efforts.  The enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, may not be sufficient to overcome these limitations and/or constraints, particularly, if the respective employment agency or agencies, recruiter(s), so-called 'headhunter(s)', employment and/or career consultant(s), temporary employment agency or

agencies, personal agent(s), personal manager(s) and/or other intermediary or intermediaries, are working with similar limitations and/or constraints." *Id.* at 2:26-42.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for extensive personal contacts and geographical proximity are overcome.

26.　　The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[t]he job search process and/or the recruitment process can typically be rendered more difficult in instances when additional information may be requested by one or by both of the parties concerning a counterpart.  This typically results in time delays and/or additional expense to the party having to comply with such a request." *Id.* at 2:43-48.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for time-consuming delays is overcome.

27.　　The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[j]ob searching efforts and/or recruitment efforts may further be rendered more difficult when the parties are not properly pre-screened, thereby resulting in wasted time and effort, and/or when the parties are not properly informed as to the needs and/or demands of a counterpart.  The needs and/or demands can include job description, job needs, project description, assignment description, salary, compensation, and/or other related information.  The failure to pre-screen the parties and/or to conduct a dialog and/or initiate interviews and/or discussions when the parties may be so far apart regarding their respective needs, requests and/or expectations, for example, those involving job duties and/or salary, can result in wasted time and effort." *Id.* at 2:49-61.  As such, the inventions as claimed provide non-conventional solutions to

the conventional problems of the day because the associated time and effort are reduced, resulting in more efficient processes and cost savings for all involved.

28.    The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[c]onfidentiality is typically another concern in job searching activities and/or in recruitment activities.  Individuals, employees, and/or hiring entities may have an interest in, and/or a desire for, maintaining confidentiality during at least some initial stages of any job search and/or recruitment effort.  In some instances, once an initial interest is expressed, any confidentiality which may have existed may be lost for the remainder of the process. Sometimes, it may be desirable for an individual, an employer and/or hiring entity, to retain at least some level of confidentiality and/or anonymity further into the job search and/or recruitment process.  In this manner, at least some confidentiality and/or anonymity can be preserved, especially if a deal between the parties is not ultimately reached." *Id.* at 2:62-3:8.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for confidentiality in the process is enhanced.  *See id.* at 6:59-65.

29.    As noted above, during prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner expressly found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, none of the pending claims are directed to an abstract idea, and there would be no preemption of the abstract idea or the field of the abstract idea.  For these same reasons, all of the claims of the Asserted Patents are patent-eligible.

30.     The '194 Patent was examined by Primary United States Patent Examiner Franz Colby.  During the examination of the '194 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 705/1, 10, 11, 705/26, 707/104.1, 10, 3, and 103R.

31.     After conducting a search for prior art during the examination of the '194 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark et al.; (ii)  5,832,497, 11/1998, Taylor; (iii) 5,884.270, 3/1999, Walker et al.; (iv) 5,884.272, 3/1999, Walker et al.; (v) 5,978,768, 11/1999, McGovern et al.; (vi) 6,324,538, 11/2001, Wesinger, Jr. et al.; (vii) 6,332,125, 12/2001, Callen et al.; (viii) 6,363,376, 3/2002, Wiens et al.; (ix) 6,370,510, 4/2002, McGovern et al.; (x) 6,381,592, 4/2002, Reuning; and (xi) 6,385,620, 5/2002, Kurzius et al.

32.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '194 Patent to issue.  In so doing, it is presumed that Examiner Colby used his or her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Colby has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

33.     The '194 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Oracle, Amazon, Monster, and CareerBuilder.

34.    The '086 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '086 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/104.1, 707/3, 10, 103R, 1, 2, 4, 5, 705/1, 10, 11, and 705/26.

35.    After conducting a search for prior art during the examination of the '086 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 4,625,081, 11/1986, Lotito et al.; (ii) 5,164,897, 11/1992, Clark et al.; (iii) 5,978,768, 11/1999, McGovern et al.; (iv) 6,370,510, 4/2002, McGovern et al.; (v) 6,381,592, 4/2002, Reuning; (vi) 6,385,620, 5/2002, Kurzius et al.; (vii) 6,567,784, 5/2003, Bukow; (viii) 6,662,194, 12/2003, Joao; (ix) 6,873,964, 3/2005, Williams et al.; (x) 7,148,991, 12/2006, Suzuki et al.; and (xi) 2003/020531, 6/2003, Parker.

36.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '086 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

37.    The '086 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Xerox, Yahoo!, EDS, Microsoft, CareerBuilder, Monster, LinkedIn, and IBM.

38.     The '864 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '864 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/758.

39.     After conducting a search for prior art during the examination of the '864 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark; (ii) 5,758,324, 5/1998, Hartman; (iii) 5,832,497, 11/1998, Taylor; (iv) 5,862,223, 1/1999, Walker; (v) 5,884,270, 3/1999, Walker; (vi) 5,884,272, 3/1999, Walker; (vii) 5,978,768, 11/1999, McGovern; (viii) 6,157,808, 12/2000, Hollingsworth; (ix) 6,266,659, 7/2001, Nadkarni; (x) 6,370,510, 4/2002, McGovern; (xi) 6.381,592, 4/2002, Reuning; (xii) 6,398,556, 6/2002, Ho; (xiii) 6,408,337, 6/2002, Dietz; (xiv) 6,409,514, 6/2002, Bull; (xv) 6,466,91, 10/2002, Mitsuoka; (xvi) 6,718,340, 4/2004, Hartman; (xvii) 6,873,964, 3/2005, Williams; (xviii) 7,054,821, 5/2006, Rosenthal; (xix) 7,305,347, 12/2007, Joao; (xx) 7,523,045, 4/2009, Walker; (xxi) 2001/0042000 Al, 11/2001, Defoor, Jr.; (xxii) 2002/0002476 A1, 1/2002, Mitsuoka; (xxiii) 2002/0152316 A1, 10/2002, Dietz; and (xxiv) 2005/0010467 A1, 1/2005, Dietz.

40.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '864 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

41.     The '864 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Xerox, Amazon, Monster, HP, CareerBuilder, Microsoft, LinkedIn, and General Electric.

42.     The '000 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '000 Patent, the United States Patent Examiner searched for prior art across multiple classifications.

43.     After conducting a search for prior art during the examination of the '000 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,884,272, 3/1999, Walker; (ii) 6,266,659, 7/2001, Nadkarni; (iii) 6,370,510, 4/2002, McGovern; (iv) 6,457,005, 9/2002, Torrey, (v) 7,305,347, 12/2007, Joao; and (vi) 2002/0120532 A1, 8/2002, McGovern.

44.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '000 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

45.     The '000 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such

technology leaders as Ricoh, Robert Half International, General Electric, IBM, AT&T, HP, Yahoo!, Xerox, Monster, Amazon, CareerBuilder, Microsoft, Oracle, and LinkedIn.

46.     The claims of the Asserted Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## THE ACCUSED INSTRUMENTALITIES

47.     Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides the GrubHub website and its ancillary sites, including its various Mobile Applications, in the United States.  The GrubHub apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing job search and/or recruitment services to individuals (including job seekers, contractors, and employers) in the United States.  The GrubHub system comprises an apparatus with multiple interconnected infrastructures that infringe the Asserted Patents.  The public-facing aspect of the GrubHub apparatus is the GrubHub website, which is available at www.grubhub.com, together with the associated GrubHub Mobile Applications for Consumers and Drivers, respectively.   Collectively, all of the foregoing comprises the "Accused Instrumentalities."

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

**COUNT I**
**Infringement of U.S. Patent No. 6,662,194**

48.  Plaintiff incorporates the above paragraphs by reference.

49.  Defendant has been on actual notice of the '194 Patent at least as early as the date it received service of this Original Complaint.

50.  Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

51.  Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 25 of the '194 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

52.  The Accused Instrumentalities comprise an apparatus for providing recruitment information. The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.   On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.   *See* Figs. 1A and 1B.   Further on information and belief, GrubHub employs multiple redundant data centers to withstand localized outages.   *See* Figs. 1A, 1B, and 2A.

I'll add that on a technical level, we're a service oriented platform that primarily operates out of multiple AWS data centers (regions) and are continually reducing our reliance on our own data centers and the monoliths they house (not much relies on them today). All the while, we continue to grow, acquire, integrate third parties, work with partners, and add functionality our customers want.

**FIGURE 1A**

2. Build on a public cloud. We chose AWS while making efforts to minimize lock-in.

3. Multiple hot datacenters to withstand localized outages and network problems.

**FIGURE 1B**

*See* https://bytes.grubhub.com/cloud-infrastructure-at-grubhub-94db998a898a



**FIGURE 2A**

> 1. <u>Docker</u> — We containerize all services, testers and utilities. It's our
>    standard unit of deployment.
>
> 2. <u>Netflix Eureka</u> — Provides service discovery within a platform instance
>    (it's the discovery service on the diagram above).
>
> 3. <u>Apache Cassandra</u> — As mentioned above, this is our standard store for
>    persistent data.
>
> 4. <u>Elasticsearch</u> — Used by a number of services that require search and
>    more complex querying capabilities.

**FIGURE 2B**

*See* https://bytes.grubhub.com/cloud-infrastructure-at-grubhub-94db998a898a

53.   On information and belief, the infringing GrubHub apparatus comprises Apache Cassandra as a primary data store (memory device).   *See* Figs. 2A and 2B.

*See also:* https://bytes.grubhub.com/cloud-infrastructure-at-grubhub-94db998a898a;

*see also*:  https://techcrunch.com/2019/12/03/aws-launches-managed-cassandra-services/

54.   Upon information and belief, the GrubHub Accused Instrumentalities comprises data centers housing servers, which further comprise memory devices, processing devices, receivers, and transmitters.  *See* Figs. 1A, 1B, 2A, and 2B.  On information and belief, such data centers are in Illinois, Texas, and Utah.  *See, e.g.,* GrubHub SEC Filing – 2014 Form S-1, available at:

https://www.sec.gov/Archives/edgar/data/1594109/000119312514075544/d647121ds1.htm

55.   As described above (*see* ¶¶ 52-54), and on information and belief, the GrubHub Accused Instrumentalities comprise a memory device, which stores information regarding at least work schedule information and/or scheduling information for individual drivers in the GrubHub network, each of whom are, on information and belief, employed by GrubHub as Independent Contractors.  *See* Figs. 3 and 4.

**How to Work for Grubhub?**

Grubhub delivery drivers are independent contractors working for, and paid by, Grubhub.

To work for Grubhub, you only need to fill out a Grubhub application. They'll look over your application, conduct a background check, and see if you're a good fit. If you're approved, you'll be granted access to their app to pick up orders in real-time as they arrive.

**FIGURE 3**

*See* https://www.lifewire.com/how-does-grubhub-work-4571012

Of course, you're never stuck at these low average wages. Grubhub drivers are independent contractors, which means maximum earnings do not exist. By following our tips to increase Grubhub driver pay, you can consistently reach higher hourly averages and make a comfortable living with food delivery.

However, independent contractors are responsible for all job-related expenses, so don't forget to budget for gas, car maintenance, and similar needs.

**FIGURE 4**

*See* https://www.ridester.com/grubhub-driver/

56.     On information and belief, the GrubHub Accused Instrumentalities store work schedule information for each such driver (independent contractor) by virtue of the driver's "Block Scheduling" selections on the GrubHub Driver App or, in the alternative, by virtue of the driver notifying GrubHub of his/her availability for engagement on an open assignment.   Available Blocks are open on a first-come, first-served basis for drivers, although certain drivers with higher ranking will receive priority.   Drivers who have formally signed up for a given block of time are given assignment priority for deliveries during the timeframe over otherwise available drivers.  *See* Figs. 5-9.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                    19



**FIGURE 5**

*See*
https://driver.grubhub.com/?utm_source=grubhub_webdinerapp&utm_medium=content_owned&utm_campaign=product_footer-link



**FIGURE 6**

*See* https://driver-support.grubhub.com/hc/en-us/articles/360029378912-How-do-I-log-into-and-set-up-my-Grubhub-for-Drivers-app-

## How Grubhub Works for Drivers

Just like drivers for any other food delivery service, Grubhub drivers have two primary responsibilities: picking up food from local restaurants and delivering it straight to customers. This process can be completed through the Grubhub for Drivers app.

**FIGURE 7**

*See* https://www.ridester.com/grubhub-driver/

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                    21





**FIGURE 8**

*See* https://driver-support.grubhub.com/hc/en-us/articles/360029409472-How-do-I-sign-up-for-blocks-

> As we mentioned in the onboarding process, drivers should schedule a delivery block. This is optional, but we highly recommend it. Drivers who schedule blocks will be preferred over other drivers that do not. It is possible to get deliveries without scheduling a block, but scheduled drivers will receive priority.
>
> If blocks fill up before you are able to claim a spot, keep a lookout for dropped blocks. On occasion, drivers will drop their block, making it available for other drivers.
>
> GrubHub uses the block method to avoid an oversaturation of drivers. This also helps ensure there are drivers on call during busy periods.
>
> It is important to note that GrubHub allows drivers with a higher "level" to schedule their blocks before others. For more information on how levels work so you can climb the ranks, go here and here.

**FIGURE 9**

*See* https://www.ridester.com/grubhub-driver/

57.     As described above (*see* ¶¶ 52-54), and on information and belief, the GrubHub Accused Instrumentalities comprise a receiver for receiving a first request from a first communication device (*e.g.,* the mobile device or computing device of the GrubHub Mobile App for Consumers or of the GrubHub web page at www.grubhub.com) associated with a hiring entity (*e.g.,* the user of the GrubHub Mobile App for Consumers and/or the user of the GrubHub web page at grubhub.com).   On information and belief, when a user seeks to place an order using the GrubHub apparatus, a first request is generated to obtain the work schedule information for the known available independent contractors in order to generate an Estimated Time for Delivery.  If acceptable, the user has the option of placing the order and completing the transaction.  *See* Fig. 10.  The generation of the Estimated Time for Delivery is performed by the processing device (as discussed above, *see* ¶¶ 52-54) of the Accused Instrumentality, and is generated in real-time upon the processing of the information contained in the first request.  On information and belief,

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                    23

the delivery of the Estimated Time for Delivery to the first communication device originates with the transmitter of the Accused Instrumentality (as discussed above, *see* ¶¶ 52-54) and contains work scheduling information for the known available independent contractors.



**Figure 10**

*See* GrubHub Customers Tracking Drivers In Real Time, available at:

https://www.youtube.com/watch?v=pCHZIpzKSCk

58.     On information and belief, when a user completes an order using the GrubHub Accused Instrumentalities, the order comprises a second request to engage and obtain the GrubHub Independent Contractor in the vicinity, and to thereafter receive delivery/status information. Such orders are transmitted electronically (via, for example, the Internet) from the first

communication device to the receiver of the Accused Instrumentality, and such orders contain information for reserving, engaging, or requesting the services of the GrubHub Independent Contractor.  The processing device of the Accused Instrumentality processes the information contained in the second request in order to reserve the services of the Independent Contractor. On information and belief, the Independent Contractors are then notified via "push notification" when a new order is ready for delivery.  Drivers are notified of available orders based on their proximity.  If the initial driver does not timely respond by accepting the offer for delivery, it is passed to the next available driver for consideration.  The notification to drivers is carried out by way of one or more "second messages" containing the details of the opportunity, and are transmitted from the transmitter of the Accused Instrumentality to the second communication device (*e.g.,* the mobile device of the GrubHub Mobile App for drivers) associated with the driver.  Upon acceptance, the driver is reserved by the processing device of the Accused Instrumentality after processing the information in the second request.  The second request is thereby confirmed, and the user is then given the options to "Track My Order" and real-time mapping features, as well as by the "ETA" and order status indications on the GrubHub Consumer App.  *See* Figs. 11-15.

 

**FIGURE 11**

*See* Track Your GrubHub Order, available at https://www.youtube.com/watch?v=pX-4shZ1PDM



**FIGURE 12**

*See* https://driver-support.grubhub.com/hc/en-us/articles/360030830171-How-do-I-use-the-Grubhub-for-Drivers-app-to-complete-deliveries-

## How does Grubhub work for couriers?

Being a food delivery app, delivery is an essential part of the business. Grubhub has a network of couriers that pick up orders from the restaurants and deliver them to the consumers.

Let's understand how does Grubhub work for couriers

## Step 1: That's an order

As soon as a restaurant confirms an order, the courier stationed nearest to the location is notified about the order. The courier has to accept the order if it is possible for him to reach in time.

## Step 2: Pick Up

After accepting the delivery request, the courier has to reach the restaurant as soon as possible. Once he reaches he has to pick up the order and update the same in this application. This helps the user to track their orders while on the way.

**FIGURE 13**

*See* https://www.ncrypted.net/blog/how-does-grubhub-work/

## Courier's Application

Other than the user, the couriers use the Grubhub Courier's application. This application needs to be simple to use because the deliveries might be delayed because of the difficulty faced by the couriers. The ensure efficiency of the deliveries the user experience for the delivery person should be excellent. Let's look into the features which ensure simplicity of the application:

- **Personal Account**: the courier can create a personal profile on the application and manage his orders. Here the courier can manage his completed orders, ratings and preferences
- **Take an Order**: The application sends push notifications to the courier everytime an order is placed in a restaurant nearby him. These location-based notifications help the courier to accept orders as soon as possible.
- **Accurate GPS service**: the application provides an accurate GPS service for the couriers. The consumers set a location of their delivery address, the couriers can access the same through the GPS system. This makes it very easy for them to deliver orders to the areas not familiar to them.
- **Contact Information**: the courier receives the contact information of the restaurant and the consumer. In case of delay or when he is not able to find a location, it is easy for him to contact the concerned person.
- **Complete an Order**: the application allows the courier to complete an order in the app. They can update the order status as 'delivered' and rate the consumer as well. It also allows the courier to review the consumer.

**FIGURE 14**

*See* https://www.ncrypted.net/blog/how-does-grubhub-work/

> ## Accepting Deliveries
>
> Once you schedule a delivery block, the next thing drivers need to do is get into position. GrubHub will not start sending you deliveries until you are in a predefined delivery zone. To identify where your delivery boundary is for your unique location, open the GrubHub app and click on the bars located in the upper right-hand corner, then select "View Region Boundaries".
>
> To start accepting orders, double-check that you are located in the delivery area and set your status to "Taking Offers". This can be done by tapping on "Unavailable". When the next screen pops up, slide the red dot from "Unavailable" to "Taking Offers".
>
> Now that GrubHub knows you are ready, offers will be sent to you based on your location. When an offer comes through, you will hear a cowbell. Once you do, a 90-second countdown will begin. If you do not accept the order within that time, it will be issued to another driver.
>
> Before you accept the offer, you can see the customer and restaurant location as well as your own. GrubHub will also show you are much you'll earn by accepting the order.

**FIGURE 15**

*See* https://www.ridester.com/grubhub-driver/

59.     Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant in this United States, and such apparatus directly performs all functionality as claimed.

60.     The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '194 Patent.

61.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                    29

62.   Defendant has been on notice of its infringement of the '194 Patent at least as early as the date upon it received service of the Original Complaint in this matter.   As such, to the extent Defendant continues its infringing activity post-notice, then all such activity is necessarily willful and deliberate.

63.   On information and belief, Defendant has a policy or practice of not reviewing the patents of others.   Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.   As such, Defendant has been willfully blind to the patent rights of Plaintiff.

64.   Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

## COUNT II
## Infringement of U.S. Patent No. 7,490,086

65.   Plaintiff incorporates the above paragraphs by reference.

66.   Defendant has been on actual notice of the '086 Patent at least as early as the date it received service of this Original Complaint.

67.   Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

68.   Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 18 of the '086 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

69.   As discussed above (*see* ¶¶ 52-54), the Accused Instrumentalities comprise an apparatus comprising a memory device, a processing device, and a transmitter.   The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including

individuals, independent contractors, temporary workers, and/or freelancers) in the United States. On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.  Further on information and belief, GrubHub employs multiple redundant data centers to withstand localized outages.

70.     As discussed above (*see* ¶ 53), and on information and belief, the infringing GrubHub apparatus comprises Apache Cassandra as a primary data store.

71.     As discussed above (*see* ¶ 54), and on information and belief, the GrubHub Accused Instrumentalities comprises data centers housing memory devices, processing devices, receivers, and transmitters.  On information and belief, such data centers are in Illinois, Texas, and Utah.

72.      As discussed above (*see* ¶ 55), and on information and belief, the GrubHub Accused Instrumentalities comprise a memory device, which stores information regarding at individuals available for applying for a job opportunity or hiring need.  On information and belief, the GrubHub memory device stores information concerning drivers who are available and willing to accept assignments within the GrubHub network.  Each such driver, on information and belief, is employed by GrubHub as an Independent Contractor and is retained by users of the GrubHub apparatus to perform specific, defined tasks for the benefit of the user.

73.     As discussed above (*see* ¶ 56), and on information and belief, the GrubHub Accused Instrumentalities store work schedule information for each such driver (independent contractor) by virtue of the driver's "Block Scheduling" selections on the GrubHub Driver App or, in the alternative, by virtue of the driver notifying GrubHub of his/her availability for engagement on an open assignment.  Available Blocks are open on a first-come, first-served basis for drivers,

although certain drivers with higher ranking will receive priority.  Drivers who have formally signed up for a given block of time are given assignment priority for deliveries during the timeframe over otherwise available drivers.

74. As discussed above (*see* ¶¶ 57-58), and on information and belief, the GrubHub Accused Instrumentalities comprise a processing device which automatically detects and processes searching events, which occur when a user of the GrubHub apparatus completes an Order and Request for Delivery (each of which are detected in real-time (*i.e.,* automatically) by the Accused Instrumentality).  Each such Order and Request for Delivery comprises a job posting for GrubHub drivers, and otherwise comprises an event which creates an interest in an individual (the driver) to seek and accept the position.  On information and belief, information relating to such requests is stored in the memory device of the Accused Instrumentality.

75. As discussed above (*see* ¶¶ 57-58), and on information and belief, the GrubHub Accused Instrumentalities comprise a processing device which processes the information relating to the search request and information regarding the individual drivers to generate a message containing information regarding the individual (including but not limited to, availability, proximity, acceptance, identity, photo, estimated time of arrival, and location (via Track Your Grub)).  The message is transmitted to the communication device (*i.e.,* the mobile device of the GrubHub Mobile Application of the user) associated with the user (employer or hiring entity) electronically via the GrubHub Mobile Application or via the GrubHub website.  *See* above and below:



*See*   https://www.theverge.com/2012/11/13/3639988/grubhub-track-your-grub-food-delivery-tracking-notifications; *see also* GrubHub Customers Tracking Drivers In Real Time, available at:

https://www.youtube.com/watch?v=pCHZIpzKSCk&t=353s

76.    The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '086 Patent.

77.    Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

78.    Defendant has been on notice of its infringement of the '086 Patent at least as early as the date upon it received service of the Original Complaint in this matter.   As such, to the extent

Defendant continues its infringing activity post-notice, then all such activity is necessarily willful and deliberate.

79.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

80.     Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

## COUNT III
## Infringement of U.S. Patent No. 9,760,864

81.     Plaintiff incorporates the above paragraphs by reference.

82.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

83.     Upon information and belief, Defendant has directly infringed at least Claim 1 of the '864 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

84.     As discussed above (*see* ¶ 52), and on information and belief, the Accused Instrumentalities comprise an apparatus comprising a memory device, a receiver, a processor, and a transmitter. The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.   On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers

located across the United States.  Further on information and belief, GrubHub employs multiple redundant data centers to withstand localized outages.

85.     As discussed above (*see* ¶ 53), and on information and belief, the infringing GrubHub apparatus comprises Apache Cassandra as a primary data store.

86.     As discussed above (*see* ¶ 54), and on information and belief, the GrubHub Accused Instrumentalities comprises data centers housing memory devices, processing devices, receivers, and transmitters.  On information and belief, such data centers are in Illinois, Texas, and Utah.

87.     As discussed above (*see* ¶ 55), and on information and belief, the GrubHub Accused Instrumentalities comprise a memory device or database, which stores at least work schedule information and/or scheduling information for individual drivers in the GrubHub network, each of whom are, on information and belief, employed by GrubHub as Independent Contractors.

88.     As discussed above (*see* ¶ 56), and on information and belief, the GrubHub Accused Instrumentalities store work schedule information for each such driver (independent contractor) by virtue of the driver's "Block Scheduling" selections on the GrubHub Driver App or, in the alternative, by virtue of the driver notifying GrubHub of his/her availability for engagement on an open assignment.  Available Blocks are open on a first-come, first-served basis for drivers, although certain drivers with higher ranking will receive priority.  Drivers who have formally signed up for a given block of time are given assignment priority for deliveries during the timeframe over otherwise available drivers.

89.     As discussed above (*see* ¶ 57), and on information and belief, the GrubHub Accused Instrumentalities comprise a receiver for receiving a first request from a communication device associated with a hiring entity (*e.g.,* the user of the GrubHub Mobile App for Consumers and/or the user of the GrubHub web page at grubhub.com).  On information and belief, when a user

seeks to place an order using the GrubHub apparatus, a first request is generated to obtain the work schedule information for the known available independent contractors in order to generate an Estimated Time for Delivery.  If acceptable, the user has the option of placing the order and completing the transaction.

90. As discussed above (*see* ¶ 58), and on information and belief, when a user completes an order using the GrubHub Accused Instrumentalities, the order comprises a second request to engage and obtain the GrubHub Independent Contractor in the vicinity, and to thereafter receive delivery/status information.  On information and belief, the Independent Contractors are notified via "push notification" when a new order is ready for delivery.  Drivers are notified of available orders based on their proximity.  If the initial driver does not timely respond by accepting the offer for delivery, it is passed to the next available driver for consideration.  The second request is confirmed, and the user is then given the options to "Track My Order" and real-time mapping features, as well as by the "ETA" and order status indications on the GrubHub Consumer App.

91. The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '864 Patent.

92. On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

93. Defendant has been on notice of its infringement of the '864 Patent at least as early as the date upon it received service of the Original Complaint in this matter.

94.     Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

95.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT IV**
**Infringement of U.S. Patent No. 10,096,000**

96.     Plaintiff incorporates the above paragraphs by reference.

97.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

98.     Upon information and belief, Defendant has directly infringed at least Claim 1 of the '000 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

99.     As discussed above (*see* ¶¶ 52-54), and on information and belief, the Accused Instrumentalities comprise an apparatus comprising a memory device, a receiver, a processing device, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.   On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.  Further on information and belief, GrubHub employs multiple redundant data centers to withstand localized outages.

100.    As discussed above (*see* ¶ 53), and on information and belief, the infringing GrubHub apparatus comprises Apache Cassandra as a primary data store.

101.   As discussed above (*see* ¶ 54), and on information and belief, the GrubHub Accused Instrumentalities comprises data centers housing memory devices, processing devices, receivers, and transmitters.  On information and belief, such data centers are in Illinois, Texas, and Utah.

102.   As discussed above (*see* ¶ 55), and on information and belief, the GrubHub Accused Instrumentalities comprise a memory device or database, which stores at least work schedule information and/or scheduling information for individual drivers in the GrubHub network, each of whom are, on information and belief, employed by GrubHub as Independent Contractors.

103.   As discussed above (*see* ¶ 56), and on information and belief, the GrubHub Accused Instrumentalities store work schedule information for each such driver (independent contractor) by virtue of the driver's "Block Scheduling" selections on the GrubHub Driver App or, in the alternative, by virtue of the driver notifying GrubHub of his/her availability for engagement on an open assignment.  Available Blocks are open on a first-come, first-served basis for drivers, although certain drivers with higher ranking will receive priority.  Drivers who have formally signed up for a given block of time are given assignment priority for deliveries during the timeframe over otherwise available drivers.

104.   As discussed above (*see* ¶ 57), and on information and belief, the GrubHub Accused Instrumentalities comprise a receiver for receiving a first request from a communication device associated with a hiring entity (*e.g.,* the user of the GrubHub Mobile App for Consumers and/or the user of the GrubHub web page at grubhub.com).  On information and belief, when a user seeks to place an order using the GrubHub apparatus, a first request is generated to obtain the work schedule information for the known available independent contractors in order to generate an Estimated Time for Delivery.  If acceptable, the user has the option of placing the order and completing the transaction using a second request.

105.   As discussed above (*see* ¶ 58), and on information and belief, when a user completes an order using the GrubHub Accused Instrumentalities, the order comprises a second request to engage and obtain the GrubHub Independent Contractor in the vicinity, and to thereafter receive delivery/status information.  On information and belief, the Independent Contractors are notified via "push notification" when a new order is ready for delivery.  Drivers are notified of available orders based on their proximity.  If the initial driver does not timely respond by accepting the offer for delivery, it is passed to the next available driver for consideration.  The second request is confirmed, and the user is then given the options to "Track My Order" and real-time mapping features, as well as by the "ETA" and order status indications on the GrubHub Consumer App.

106.   The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '000 Patent.

107.   On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

108.   Defendant has been on notice of its infringement of the '000 Patent at least as early as the date upon it received service of the Original Complaint in this matter.

109.   Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

110.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, GreatGigz Solutions, LLC respectfully requests the Court enter judgment against Defendant as follows:

1.    Declaring that Defendant has infringed each of the Asserted Patents;

2.    Declaring that Defendant has willfully infringed each of the Asserted Patents;

3.    Awarding GreatGigz Solutions, LLC its damages suffered because of Defendant's infringement of the Asserted Patents;

4.    Awarding GreatGigz Solutions, LLC its damages suffered due to Defendant's willful infringement of the Asserted Patents;

5.    Awarding GreatGigz Solutions, LLC its costs, attorneys' fees, expenses, and interest;

6.    Awarding GreatGigz Solutions, LLC ongoing post-trial royalties; and

7.    Granting GreatGigz Solutions, LLC such further relief as the Court finds appropriate.

## JURY DEMAND

GreatGigz Solutions, LLC demands trial by jury, under Fed. R. Civ. P. 38.

Dated:  November 6, 2020                    Respectfully Submitted


                                            /s/ Thomas Fasone III
                                            Thomas Fasone III
                                            Texas Bar No. 00785382
                                            tfasone@ghiplaw.com
                                            M. Scott Fuller
                                            Texas Bar No. 24036607
                                            sfuller@ghiplaw.com
                                            Randall Garteiser
                                            Texas Bar No. 24038912
                                            rgarteiser@ghiplaw.com
                                            Christopher Honea
                                            Texas Bar No. 24059967
                                            chonea@ghiplaw.com

                                            **GARTEISER HONEA, PLLC**
                                            119 W. Ferguson Street
                                            Tyler, Texas 75702
                                            Telephone: (903) 705-7420
                                            Facsimile: (888) 908-4400


                                            Raymond W. Mort, III
                                            Texas State Bar No. 00791308
                                            raymort@austinlaw.com
                                            **THE MORT LAW FIRM, PLLC**
                                            100 Congress Ave, Suite 2000
                                            Austin, Texas 78701
                                            Tel/Fax: (512) 865-7950


                                            **ATTORNEYS FOR**
                                            **GREATGIGZ SOLUTIONS, LLC**